SOUTHWEST TEXAS PATHOLOGY
ASSOCIATES, L.L.P., et al.,
Appellants,

v.

Gail Ann ROOSTH, Appellee.

No. 04–00–00259–CV.

Court of Appeals of Texas,
San Antonio.

Aug. 16, 2000.

Bernard Wm. Fischman, Tinsman & Houser, Inc., San Antonio, for Appellant.

Richard R. Orsinger, Sue M. Hall, Law Office of Sue M. Hall, San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice, PAUL W. GREEN, Justice.

Opinion by: PHIL HARDBERGER, Chief Justice.

South Texas Pathology Associates, L.L.P., Everett Donowho, Jr., M.D., P.A., Paula R. Larson, M.D., George Bannayan, M.D., P.A., and Southwest Texas Pathology Associates, L.L.P. (collectively the "Pathology Defendants") appeal an order denying a motion to compel arbitration in a divorce action between Gail Ann Roosth ("Gail") and Thomas S. Roosth ("Thomas"). The order denying the motion to compel arbitration also denied the Patholo-gy Defendants' pleas in abatement. The Pathology Defendants present four issues in their brief: (1) whether Gail is bound by the arbitration provisions in the partnership agreements between the Pathology Defendants and Thomas; (2) whether Gail's claims are subject to arbitration under those provisions; (3) whether the Pathology Defendants waived their right to compel arbitration; and (4) whether the Pathology Defendants waived their right to stay the trial court proceedings. We affirm the trial court's order.

## Background

On or about January 21, 1999, Southwest Texas Pathology Associates, L.L.P. entered into a preliminary agreement, which they called a Term Sheet for Combination of the Medical Practices of Southwest Texas Pathology Associates, L.L.P. and George Bannayan, M.D., P.A. ("Term Sheet"). Pursuant to the Term Sheet, Southwest Texas Pathology Associates, L.L.P. and San Antonio Pathology Associates, L.L.P. were to form a new partnership to be known as South Texas Pathology Associates, L.L.P.

On March 3, 1999, Thomas filed a petition for divorce. Temporary orders were entered on May 12, 1999, enjoining the parties from engaging in certain acts.

Effective July 1, 1999, the partners in Southwest Texas Pathology Associates, L.L.P. amended their partnership agreement in accordance with the Term Sheet. The amendments permitted a partner to be expelled without cause by a unanimous vote of the partners. Before these amendments, a partner could only be expelled for cause. The amendments also added a new provision requiring arbitration of disputes arising out of the partnership agreement.

South Texas Pathology Associates, L.L.P. was also formed effective July 1, 1999. Southwest Texas Pathology Associ-

ates, L.L.P. had a 61.225% interest in the newly formed entity, and San Antonio Pathology Associates, L.L.P. had the remaining 38.775% interest.

On July 26, 1999, Gail filed a motion requesting a hearing on whether Thomas should be ordered to pay Gail temporary support during the pendency of the divorce action. On August 2, 1999, Gail's request was granted, and Thomas was ordered to pay $10,000 per month in support.

In August of 1999, a joint resolution was signed by all of the partners of South Texas Pathology Associates, L.L.P. giving Thomas the opportunity to resign as a partner. If Thomas elected not to resign, the joint resolution provided that he would be expelled effective August 18, 1999. Thomas sought and obtained a temporary restraining order to prevent his expulsion; however, the temporary restraining order was dissolved on August 24, 1999, on the basis that Thomas had an adequate remedy at law for damages.

On September 2, 1999, Thomas filed a motion seeking a modification of the temporary orders that required Thomas to pay Gail temporary support. The basis for the modification request was Thomas's unemployment.

On September 10, 1999, Gail filed a motion seeking to join the Pathology Defendants as third-party defendants. On September 10, 1999, Thomas's motion to modify the temporary orders was reset to a later date, but Gail's motion to join the Pathology Defendants was granted. Also on September 10, 1999, Gail and Thomas entered into a Partition Agreement. Each party was to receive 50% of any amounts obtained in litigation against the Pathology Defendants.

On September 24, 1999, Thomas's claims against the Pathology Defendants were ordered to mediation/arbitration. The order was signed on October 9, 1999, and the mediation was to occur on or before October 31, 1999. If the case did not settle at mediation, the parties were ordered to arbitration, and the arbitration was to occur not later than January 31, 2000. Despite this deadline, the arbitration was tentatively scheduled for May 22–June 2, 2000.

On September 28, 1999, Gail filed her original answer and first amended counterpetition for divorce joining the Pathology Defendants. Gail alleged that Thomas's execution of the amended partnership agreement for Southwest Texas Pathology Associates, L.L.P. and his execution of the partnership agreement for South Texas Pathology Associates, L.L.P. was in violation of the temporary orders. Gail alleged that the execution of these documents was undertaken to injure and defraud Gail and the community estate. Gail further alleged that the Pathology Defendants aided and abetted Thomas because they knew or constructively knew of the pending divorce action. In the alternative, Gail alleged that if Thomas was not compliant in the tortious·intent of the act expelling him, then the Pathology Defendants acted to injure both Thomas and Gail. Gail's position is that the Pathology Defendants and Thomas engaged in a conspiracy to terminate Thomas for the purpose of defrauding Gail of her community property rights and interest in Thomas's medical practice. She says that the Pathology Defendants were co-parties in carrying out a plan of actual fraud, constructive fraud, or breach of fiduciary duty.

On December 27, 1999, Gail filed her response to the Pathology Defendants' request for disclosure. In addition, Gail filed her response to the Pathology Defendants' requests for production of documents. Gail also filed answers to interrogatories. On December 27, 1999, the Pathology Defendants filed a motion to compel discovery. The motion was set for hearing on January 5, 2000.

On March 23, 2000, the Pathology Defendants filed their motion to compel arbitration. The motion was heard on April 10, 2000. On April 25, 2000, an order was signed denying the motion to compel arbitration and the pleas in abatement. On

May 25, 2000, the trial court entered its findings of fact and conclusions of law.

The trial court found that Gail is suing Thomas for fraud, constructive fraud, breach of fiduciary duties, conspiracy and violation of the trial court's temporary orders, and that Gail is suing the Pathology Defendants as co-parties to Thomas's actions and for conspiracy. The trial court further found that Gail was not a party to the pending lawsuit between Thomas and the Pathology Defendants, and that an identity of parties does not exist between the two causes. The trial court also found that the claims asserted in the two lawsuits are different based on the relief sought because Gail alleged that the Pathology Defendants were in complicity with Thomas in undertaking the actions that impaired her claims for alimony and child support. The trial court found that Thomas violated the temporary orders in signing the amendment to the partnership agreement for Southwest Texas Pathology Associates, L.L.P. and the partnership agreement for South Texas Pathology Associates, L.L.P. The trial court found that Gail was not a party to those agreements and was not bound to mediate or arbitrate by the orders in the other pending case.

The trial court concluded that there was not sufficient identity of parties or sufficient similarity of claims to merit abatement. The trial court concluded that it has the power to adjudicate Gail's claims because Gail is not a signatory to the agreements containing the arbitration provisions. The trial court further concluded that requiring Gail to arbitrate her claims would violate Gail's constitutional and statutory right to a jury trial on her claims.

The Pathology Defendants timely filed this appeal from the trial court's order. On May 9, 2000, we granted the Pathology Defendants' motion to abate trial discovery and trial court proceedings pending the outcome of this appeal.

## Agreement to Arbitrate

The Pathology Defendants contend that Gail is bound by the arbitration provision contained in the partnership agreements. Because Gail denied that she is bound by the arbitration provision, the trial court was required to summarily determine whether an agreement to arbitrate existed between the Pathology Defendants and Gail. See Tex. Civ. Prac. & Rem.Code Ann. § 171.021 (Vernon Supp. 1999); ANCO Ins. Services of Houston, Inc. v. Romero, 27 S.W.3d 1, 3 (Tex.App.—San Antonio 2000, no pet. h.). This court reviews a trial court's determination regarding the existence of an arbitration agreement under an abuse of discretion standard. See ANCO Ins. Services of Houston, Inc., 27 S.W.3d at 3; Hardin Const. Group, Inc. v. Strictly Painting, Inc., 945 S.W.2d 308, 312 (Tex.App.—San Antonio 1997, orig. proceeding). Under this standard, the trial court's finding must be upheld unless it is determined that the trial court could reasonably have reached only one decision. See id. Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's finding unless it is shown to be arbitrary and unreasonable. See Walker v. Packer, 827 S.W.2d 833, 840 (Tex.1992). Legal conclusions, however, are reviewed de novo. See id; Pony Exp. Courier Corp. v. Morris, 921 S.W.2d 817, 820 (Tex. App.—San Antonio 1996, no writ).

The Pathology Defendants assert that Gail is bound by the arbitration provision because all of her claims are derived from Thomas's former status as a partner. The Pathology Defendants contend that Gail's claims cannot stand independent of the partnership agreements because in the absence of the partnership agreements, Gail has no economic interest in the assets of the partnership entities. Gail contends that she is not claiming any recovery based upon the new partnership agreements. Rather, she is claiming that

Thomas and the Pathology Defendants worked together to fire and eject Thomas from the partnerships in the middle of their divorce in an effort to impair: (1) the value of the community estate; (2) Gail's argument for disproportionate division of the estate based on relative incomes; and (3) her claim for temporary alimony and temporary and permanent child support.

■ A nonsignatory can only be bound by the terms of an arbitration provision in an agreement if the nonsignatory is asserting claims that require reliance on the terms of the written agreement containing the arbitration provision. *See ANCO Ins. Services of Houston, Inc.*, 27 S.W.3d at 3, 4; *Valero Energy Corp. v. Teco Pipeline Co.*, 2 S.W.3d 576, 591–93 (Tex.App.— Houston [14th Dist.] 1999, no pet. h.); *Carlin v. 3V Inc.*, 928 S.W.2d 291, 296 (Tex. App.—Houston [14th Dist.] 1996, no writ); *Merrill Lynch, Pierce, Fenner & Smith v. Eddings*, 838 S.W.2d 874, 878–79 (Tex. App.—Waco 1992, writ denied). In other words, the nonsignatory's claim must seek to enforce the terms of the written agreement containing the arbitration provision in order for the nonsignatory to be bound to arbitrate. The nonsignatory cannot enforce specific terms of the agreement while seeking to avoid the arbitration provision. In order to determine if Gail's claims require such reliance, we examine the nature of her claims.

Gail is asserting that the Pathology Defendants knowingly participated in Thomas's breach of his fiduciary duty in entering into the partnership amendments that permitted him to be expelled without cause which violated both his fiduciary duty to Gail and the temporary orders. In addition, Gail is asserting that the Pathology Defendants are co-parties to the fraudulent action taken by Thomas in entering into the partnership amendments that permitted him to be expelled without cause. Finally, Gail is asserting that the Pathology Defendants conspired with Thomas to amend the partnership agreements to permit Thomas to be expelled without cause.

■ The relationship between a husband and wife is a fiduciary relationship, and the spouses are bound by the fiduciary relationship in dealing with the community estate. *See Vickery v. Vickery*, 999 S.W.2d 342, 357 (Tex.1999); *Connell v. Connell*, 889 S.W.2d 534, 541 (Tex.App.— San Antonio 1994, writ denied). A third party who knowingly aids and assists in the breach of a fiduciary duty may also be liable. *See Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 138 Tex. 565, 160 S.W.2d 509, 514 (1942); *Connell*, 889 S.W.2d at 541. The fiduciary duty between Gail and Thomas is independent of the partnership agreement. Gail's claim is that the Pathology Defendants knowingly assisted Thomas in breaching this fiduciary duty by executing the partnership amendments. Gail does not seek to enforce any of the terms of the partnership amendments as part of this claim. On the contrary, her position is that the amendment is bogus and was written to harm her rights. Gail's claim is that the action taken by the Pathology Defendants in entering into the partnership amendments constituted a knowing participation in the breach of a fiduciary duty. It is the Pathology Defendants' action in amending the partnership agreements that underlies Gail's claim, not the terms of the partnership amendments.

■ Gail also claims that the Pathology Defendants were co-parties to Thomas's fraudulent act in amending the partnership agreements in a manner that permitted him to be expelled without cause. Fraud may be classified as actual or constructive. *Vickery v. Vickery*, 999 S.W.2d 342, 377 (Tex.1999). Actual fraud involves dishonesty of purpose or intent to deceive designed to injure another or to obtain an undue and unconscientious advantage. *See id.; see also Vela v. Marywood*, 17 S.W.3d 750 (Tex.App.—Austin 2000, pet. filed). Similar to her first claim, Gail does not seek to enforce any of the terms of the partnership amendments in asserting her

fraud claim. Instead, Gail seeks to prove that the actions taken by Thomas and the Pathology Defendants in entering into the partnership amendments involved dishonesty of purpose or intent to deceive that was designed to injure her.

■ Finally, to prevail on her conspiracy theory, Gail had to establish the following elements: (1) a combination of two or more persons; (2) an object to be accomplished (an unlawful purpose or a lawful purpose by unlawful means); (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *See Insurance Co. of North America v. Morris,* 981 S.W.2d 667, 675 (Tex.1998); *Connell,* 889 S.W.2d at 541. None of these elements require reliance on the terms of the written agreement containing the arbitration provision.

■ The Texas Supreme Court has recognized that goodwill may exist in a professional partnership that must be considered in dividing a community estate upon divorce. *See Salinas v. Rafati,* 948 S.W.2d 286, 291 (Tex.1997); *see also Geesbreght v. Geesbreght,* 570 S.W.2d 427, 433–34 (Tex.Civ.App.—Fort Worth 1978, writ dism'd). In addition, a disparity in earning capacities or incomes is a proper consideration in determining whether to award a disproportionate division of the community estate. *See Murff v. Murff,* 615 S.W.2d 696, 699 (Tex.1981). Gail seeks to prove that the Pathology Defendants' knowing participation in Thomas's breach of his fiduciary relationship, their fraudulent acts, and their conspiracy damaged Gail because no goodwill or disparity in income existed to consider as a result of the actions taken and the actions further impaired Gail's claim for temporary alimony and temporary and permanent child support. Gail's right to pursue these claims against the Pathology Defendants as third parties continues to be recognized by the Texas Supreme Court. *See Schlueter v. Schlueter,* 975 S.W.2d 584, 590 (Tex.1998) (affirming judgment against

third party in divorce action for fraud, breach of fiduciary duty, and conspiracy)

Gail does not seek to enforce the terms of the partnership amendments in any of the claims she has asserted. Gail's recovery is dependent on her ability to prove that the Pathology Defendants acted in concert with Thomas to amend the partnership agreement in such a manner as to allow them to expel Thomas without cause, resulting in a loss to the community estate and an immediate reduction in Thomas's income.

If we were to require Gail to submit to arbitration, and she is successful in proving her conspiracy theory or in proving the Pathology Defendants were co-parties to Thomas's fraudulent acts, we would have bound Gail to an arbitration provision that was wrongfully added to the partnership agreement as a result of the conspiracy/complicity between the Pathology Defendants and Thomas. Gail's claims do not seek to enforce the beneficial terms of the amendments to the partnership agreements. There are no terms in those amendments that would benefit Gail. Gail's claims are based on the actions giving rise to the partnership amendments. Gail does not seek to enforce the provisions of the partnership amendments. She seeks to prove that the partnership amendments resulted from the tortious acts of Thomas and the Pathology Defendants. Because Gail's claims do not require reliance on the terms of the partnership amendments, she is not bound to arbitrate.

### Conclusion

We conclude that Gail is not bound to arbitrate her claims. The issues relating to waiver and the pleas in abatement are moot because the only order on a plea in abatement we have jurisdiction to consider is the abatement required in connection with arbitration. *See Hearthshire Braeswood Plaza Ltd. Partnership v. Bill Kelly Co.,* 849 S.W.2d 380, 385–86 (Tex.App.—

Houston [14th Dist.] 1993, writ denied). The trial court's order is affirmed.